677 S.W.2d 833 (1984)
383 Ark. 457
Jane CZECH, City Clerk, City of Little Rock, et al., Appellants,
v.
Kenny BAER and Fraternal Order of Police, Lodge 7 et al., Appellees.
No. 84-235.
Supreme Court of Arkansas.
October 24, 1984.
*834 Gill, Skokos, Simpson, Buford & Owen, P.A., Little Rock, for Ark. Mun. League, intervenor.
Little Rock City Attorney's Office by Carolyn B. Witherspoon and Thomas M. Carpenter and Friday, Eldredge & Clark by Bill S. Clark, Christopher Heller and Diane S. Mackey, Little Rock, for appellants.
Nussbaum, Newcomb & Hendrix by Robert A. Newcomb and Kaplan, Brewer & Miller, P.A. by JoAnne Maxey, and Phillip Kaplan, Little Rock, for appellees.
GEORGE ROSE SMITH, Justice.
In early September, 1984, the appellees, Lodge 7 of the Fraternal Order of Police and some of its members, presented to the City Clerk of Little Rock separate initiative petitions to place two salary-related measures on the ballot for the November 6 general election. After the Clerk determined that the petitions did not have the required number of valid signatures, the appellees filed additional petitions with more signatures. The Clerk then found the number of signatures sufficient, but she refused to certify the measures to the county election commission because the city attorney doubted the validity of the proposed measures.
*835 The Fraternal Order sought review in the chancery court, as provided by Amendment 7 to the Constitution of 1874. The appellants (the City and some of its officers) resisted the chancery complaint on the ground that the proposed measures would be invalid, if approved. The chancellor accepted the Clerk's finding of sufficient signatures, but he refused to order her to certify the measures, on the ground that a chancery court cannot issue writs of mandamus. The appellees countered by filing a suit for mandamus in the circuit court. There the matter was quickly tried on its merits. The court found that the City had improperly exercised its authority and issued the writ of mandamus. The City's two appeals have been consolidated for decision in this court. Our jurisdiction includes election cases. Rule 29(1)(g).
At the outset the appellees argue that we should permit the measures to be placed on the ballot without first determining their validity. Certainly it is true that a party who resists an initiated petition on grounds such as insufficiency of signatures or improper ballot title is not required to question the validity of the proposed measure. On the other hand, that question may be considered and decided when it is properly raised, even before the election. Proctor v. Hammons, 277 Ark. 247, 640 S.W.2d 800 (1982); Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656 (1912).
Here the matter is one of public interest. The validity of the proposed measures was challenged in the trial courts by the City, the real party in interest. The cases were heard in two courts, with the parties having an opportunity to present their proof. The consolidated cases have been fully briefed in this court. Except for certain matters to be explained later in this opinion, we perceive no reason why our decision should be deferred. To the contrary, it is desirable that as far as possible the questions should be set at rest, to avoid useless expenditures of time and money in campaigns for and against a measure which would be invalid even if approved by the electorate.
Both measures involve the salaries of the city police. Negotiations between the City and the Lodge for an increase in salary were at a standstill when the parties agreed to submit the issue to an arbitrator, Joe Woodward, whose decision would concededly not be binding on either party. Woodward had not reached his decision when the first petitions were filed in early September.
One measure, the "fact-finder" ordinance, relates only to the pending dispute. That measure provides that all patrolmen and sergeants will receive a pay increase "in the amount as recommended by the Fact Finder, Mr. J. Woodward, now considering the facts presented before him by the City of Little Rock and the Fraternal Order of Police." The other measure, the "binding-arbitration" ordinance, is a permanent measure providing a procedure by which any future wage controversy not resolved by agreement is to be referred to an arbitration panel whose decision will be final, binding all parties and not reviewable by any court. It is specifically provided that the city's board of directors will be required to carry out the arbitration panel's determination.
First, the binding-arbitration ordinance. The basic defect in this ordinance lies in the rule of law, twice stated in the Constitution, that no municipal corporation shall be authorized to pass any law contrary to the general laws of the state. Ark. Const., Art. 12, § 4, and Amendment 7. It is provided by state law that a city's legislative body is to fix the number and salaries of its policemen and firemen. Ark. Stat.Ann. § 19-1617 (Repl.1980). It is fundamental that a city's legislative power cannot be delegated to a committee or an administrative body. City of Harrison v. Snyder, 217 Ark. 528, 231 S.W.2d 95 (1950). Nor can the city directors delegate or bargain away their legislative authority. In holding that a city cannot be compelled to bargain collectively with its employees, we have said:
*836 Basically, the reason for the rule is that the fixing of wages, hours, and the like is a legislative responsibility which cannot be delegated or bargained away. [Emphasis supplied.] Several aspects of the matter were discussed in the Wichita [Public Schools Emp. Union v. Smith] case [194 Kan. 2, 397 P.2d 357 (1964) ], where the court said:
The entire matter of qualifications, tenure, compensation and working conditions for any public employee involves the exercise of governmental powers which are exercised by or through legislative fiat. Under our form of government public office or public employment cannot become a matter of collective bargaining and contract.
The objects of a political subdivision are governmentalnot commercial. It is created for public purposes and has none of the peculiar characteristics of enterprises maintained for private gain. It has no authority to enter into negotiations with labor unions concerning wages and make such negotiations the basis for final appropriations. Strikes against a political subdivision to enforce collective bargaining would in effect amount to strikes against the government.
City of Fort Smith v. Ark. Council No. 38, AFL-CIO, 245 Ark. 409, 433 S.W.2d 153 (1968).
As we have noted, the Initiative and Referendum Amendment itself provides that "no local legislation shall be enacted contrary to the Constitution or any general law of the State." Since state law prohibits a city from abdicating or delegating its legislative power to fix its employees' pay, that result cannot be accomplished by an initiated ordinance. Hence the binding-arbitration ordinance would be invalid even if approved by the voters. (We add that the appellees cite six out-of-state cases upholding binding arbitration agreements, but each decision was based on a statute permitting that procedure. We have no similar statute.)
The issues are not equally clear as to the fact-finder ordinance. The burden of proof was on the City, for Amendment 7 provides: "In the event of legal proceedings to prevent giving legal effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition." Amendment 7, subsection Amendment of Petition.
As we have seen, the first batch of petitions for the fact-finder ordinance proposed a pay increase in the amount to be recommended by Woodward. After those petitions, with an insufficient number of valid signatures, had been filed, Woodward announced a non-binding recommendation of a 7½% increase. Additional petitions were then filed to supply the deficiency in the number of signatures. The only one of those petitions introduced in evidence, however, contains a revised proposal by which all patrolmen and sergeants "are hereby given a 10% increase in yearly salary." That was not Woodward's recommendation.
When an initiated petition consists of several parts, as here, all the parts constitute one petition and must be considered together. Reeves v. Smith, 190 Ark. 213, 78 S.W.2d 72 (1935). In the case at bar, however, there is a conflict in that some parts of the petition refer to the increase recommended by Woodward, which proved to be 7½%, while other parts refer to a 10% increase. The facts have not been sufficiently developed to show what the City Clerk, in response to the writ of mandamus, has certified or may certify to the County Election Commission as the correct ballot title.
With the record in such a state of uncertainty we are not justified in holding absolutely that the fact-finder ordinance should not be on the ballot in any form. Consequently we affirm the circuit court's issuance of the writ of mandamus with respect to the fact-finder ordinance, but we express no opinion about the effect of that writ.
*837 The circuit court judgment is affirmed in part and reversed in part. An immediate mandate is ordered, directing that the binding-arbitration ordinance not be submitted to the electorate, or, to the extent that such a directive may be too late to be effective, that the votes not be counted or considered. The chancery decree is affirmed.
HUBBELL, C.J., and HOLLINGSWORTH, J., not participating.